THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN W. GOODWIN, Relator, v JOHN R. VOORHIS and Others, Commissioners, Composing the Board of Police of the Police Department of the City of New York, Respondents.

*Police department of New York city — reinstatement of a roundsman — right to a trial — a resignation obtained by force and fraud — minutes of a former trial in a court — their effect — statute of limitations.*

In 1889 John R. Goodwin, a roundsman, resigned from the police force of the city of New York, and his resignation was accepted by the police commissioners. Subsequently he applied for a *mandamus* to compel his reinstatement upon the ground that his resignation was procured by coercion and fraud of his sergeant and captain, and, further, that his resignation had been fraudulently altered by them. A trial of the issue presented by these proceedings, to which the commissioners were parties, took place in the Supreme Court, and the issue as to coercion and fraud was found in favor of Goodwin, who then applied to the police commissioners for reinstatement upon the ground that the court had decided that a resignation procured in such a manner, or one which had been altered, was a nullity.

Upon his application Goodwin set forth the facts by affidavit and annexed thereto a copy of the testimony and findings of the jury on the trial of the issues as to fraud, coercion and alteration. Goodwin's application having been denied peremptorily, without an opportunity having been afforded him to be heard and to give further evidence, he sued out a writ of *certiorari* to review the action of the commissioners.

*Held,* that the action of the commissioners was improper, and that Goodwin was entitled to a rehearing of the case by the commissioners.

That the commissioners, however, were not bound to accept the testimony and findings of the jury as final, and that they might demand the production of witnesses.

That the statute of limitations, providing that a proceeding to restore an officer to the police force must be brought within two years, and that any writ to review such a determination must be granted and served within four calendar months after the determination, were not a bar to this proceeding. (Per O'Brien, J.)

That the original action of the police commissioners, in 1889, had been taken in ignorance of the facts and was based upon a mere nullity, and that the proceeding by *certiorari*, taken in February, 1892, to review their subsequent determination, made in January, 1892, was in time. (Per O'Brien, J.)

Certiorari to review the proceedings and decision of John R. Voorhis, John McClave, James J. Martin and Charles F. McLean, commissioners, composing the board of police of the police department of the city of New York, denying the application of John W. Goodwin that they rescind a resolution theretofore made accepting his alleged resignation of his office of roundsman in said department.

*Louis J. Grant*, for the relator.

*E. H. Hawke, Jr.*, and *W. H. Clarke*, for the respondents.

Patterson, J.:

The subject-matter of this application has been several times presented for the consideration of this court, and we have had occasion to state that the facts being as claimed by the relator, he has suffered a wrong calling loudly for redress. Unfortunate mistakes in practice have prevented the enforcement of his rights up to the present time, but we are satisfied they may be secured by following the course now directed to be pursued. A brief statement of proceedings anterior to this, and of what has been determined or held in them, will not be out of place. On the 13th day of August, 1889, the relator was a member of the police force of the city of New York. On that day he signed a paper purporting to be a resignation of his position, and which, on being presented to the board of police commissioners, was accepted by that body. The paper was regular in form, recited that it was the voluntary act of the relator, and was signed of his own free will and accord, and that it was not caused by any threat of punishment or act of coercion from his

superior officers, or any other person connected with the police department. It further appears in the record that, subsequent to the acceptance of the resignation, the relator refused to give up his shield or badge of office, and demanded reinstatement as a member of the force, alleging that the resignation had been procured by coercion and fraud practiced upon him by the sergeant and captain of the precinct to which he was attached. The commissioners declined to restore him to his position, whereupon a writ of *certiorari* was obtained from this court, upon the hearing on the return of which it was held that the remedy invoked was inapplicable, because the commissioners had merely acted within their authority and jurisdiction to accept a resignation regular on its face, one appearing to be the voluntary and valid act of the relator; and as no proceeding or judgment of any kind had been taken or pronounced against him, there was nothing to be reviewed by *certiorari*. But in the opinion of the General Term (by BRADY, J.), it is said that "if the charge can be made against any member of the force, whoever it may be, whether captain or sergeant, that the relator was forced to resign, that would doubtless furnish a good and sufficient reason why he should be reinstated on a proper application to the respondents for that purpose, and which, if denied, might be the subject of review in a proper proceeding," etc. After the dismissal of the writ referred to, an alternative *mandamus* to reinstate the relator was applied for, and it was then further claimed that the resignation had been fraudulently altered at the police station by the sergeant or captain. Issues of fact were framed and tried by a jury, and it was found by the verdict that the resignation was obtained by force, fraud and coercion of the sergeant and captain, but without any participation therein of the commissioners. On the findings of the jury a peremptory order was issued at Special Term for the reinstatement of the relator; but, on appeal, it was reversed on the specific ground that the rescision of the resolution accepting the resignation was a prerequisite to restoration of the relator to the force, and that it did not appear that the respondents had refused to entertain the relator's application, and hence they could not be compelled to rescind their prior action without the presentation to them of facts to justify it, or to require it be done. The question was not properly presented, and it was not for the court to compel a reinstatement arbitrarily.

But, again, the court indicated what, in its judgment, was the proper course to be pursued by the relator in the premises. Mr. Justice Ingraham, in the opinion of the court, says : " When the respondent had determined to disaffirm the resignation he could have presented the case to the board with a statement of the circumstances which induced him to sign the resignation and a request that they would reconsider their official act in accepting his resignation. It would then have been their duty to ascertain whether the respondent had truly stated the facts, and to determine whether or not their action should be reconsidered and the respondent reinstated." And in the opinion of the presiding justice on the same appeal, it is said : " If the so-called resignation was altered and added to, as is claimed by the relator, it was no resignation at all, as such alterations were fraudulent and did alter the character of that paper, and, in fact, destroyed whatever validity it might have possessed."

We thus have an authoritative expression of opinion on two subjects connected with this matter; first, that if the facts as claimed by the relator are established, the resignation is not valid, and may be avoided if it is not altogether void ; and, secondly, that the proper method of obtaining redress was to apply to the board of police commissioners to reconsider its action and to reinstate the petitioner. That course has now been pursued. On the 1st day of December, 1891, the relator presented a written request and demand to the respondents that they reconsider the acceptance of the resignation. The general grounds of the request are stated in that writing and the details are set forth in an affidavit served therewith, to which was annexed a copy of the stenographer's minutes of testimony and findings of the jury on the trial of the issues in the *mandamus* proceedings.

On the 29th day of January, 1892, the police commissioners acted upon the request and demand of the relator of December 1, 1891, and refused to comply with it. That application was made under the express declaration of this court that it was the proper course to pursue, and upon its denial a writ of *certiorari* was granted to review the decision of the commissioners, and thus the whole subject is brought again before us.

The return of the commissioners as first made was defective and insufficient. As finally made, it consists of a sworn statement of

their action, and of the reasons governing it, and of documents, including the stenographer's minutes of the trial of the *mandamus* issues, which had been furnished them by the relator. Those minutes were intended to be evidence upon which the commissioners should act. They were sent originally to the respondents, to substantiate, in detail, what was generally set forth in the affidavit of the relator, and showed not only the findings of the jury in the *mandamus* proceeding, but also all the testimony taken by both parties on the trial of the issues therein. The commissioners were parties to that proceeding, made a return to the writ, were represented by counsel and contested it. But that does not make such minutes absolute evidence if the commissioners required further, or, as it is called, common-law proof. If we could hold that these minutes, and the evidence thus furnished to the commissioners was such as they were obliged to receive, we might be able to dispose of the case, at once, on the merits. But we do not feel justified in holding that these documents thus placed before the commissioners constituted such technical legal evidence as required them to reinstate the relator upon that evidence alone. We think the respondents were not bound to accept the affidavits of the relator, nor the evidence of the witnesses taken in the *mandamus* proceedings, as absolute and conclusive proof of the facts upon which the relator demanded reinstatement; but, at the same time, the respondents could not arbitrarily reject the relator's application, made as stated, in pursuance of a direct decision of this court upon that point, and without allowing him that opportunity to be heard, which was the very ground and essence of the decision made in the former proceeding. It is not a sufficient excuse for the respondents to say that they never refused to hear the relator. He did all that he possibly could have done, or that, in reason, could have been required of him. He demanded the right to be heard, and submitted papers which might have been sufficient in this matter to satisfy the commissioners morally, and he insisted upon an opportunity of presenting his whole case for that re-examination or re-hearing, to which this court held he was entitled. The respondents never afforded him that opportunity to which he was so entitled. If, upon such opportunity being afforded, the respondents had demanded the production of his witnesses, we think they would have had a right to inquire into the whole matter,

*de novo ;* but without such an opportunity (as stated before), they could not make such a summary disposition of this matter as that to which we have adverted, and which was palpably wrong. The conclusion we reach is that the proceeding of the respondents should be reversed and the matter sent back to them for further action, with instructions to notify the relator of the time and place at which his application will be heard, and an opportunity offered him to present his testimony. No costs of this application to either party.

VAN BRUNT, P. J., concurred.

O'BRIEN, J.:

I concur. The only serious question is that raised as to the statute of limitations. Section 272 of the New York city consolidation act provides that an action or proceeding at law or in equity " to restore or reinstate to the police force or department any member or officer thereof    *    *    *    shall be commenced within two years after the cause of action shall have accrued."

Section 2125 of the Code of Civil Procedure requires that a writ to review a determination must be granted and served within four calendar months after the determination.

In *People ex rel. McNeary* v. *Police Commissioners* (64 Hun, 205) it was held, construing section 2125 of the Code, that where it appeared on the face of the petition that the statutory time had expired, the court needed no other proof, and the board of police was not required to make a return and set up the failure to bring the proceedings within the time limited, but the court should dismiss such application, having no jurisdiction to issue the writ.

As the original action of the commissioners was taken in August, 1889, upon accepting what appeared to be a resignation of the relator, if the period of limitation began to run from August, 1889, then it is clear, under either and both of the sections referred to, that this proceeding taken in February, 1892, was too late.

It must be remembered, however, that the proceeding taken in February, 1892, was to review the determination of the board of police commissioners made in January, 1892. The original action of the commissioners in 1889 was taken in ignorance of the facts, and was based upon what, in view of the subsequent light thrown about the circumstances relating to the resignation, must be held to

have been a nullity    In the former proceedings before this court the denial of relief to relator was, in effect, based on the fact that there had been no final determination by the board.

Although such facts were before them the commissioners did not act until January, 1892, and, then, having finally determined to deny relator's application the statute of limitations commenced to run, and this proceeding in February was within the statutory period. I do not, therefore, regard the point as well taken, that by reason of the statute of limitations having run, this court is without jurisdiction to afford relator such relief as he is entitled to on the merits.

Proceedings of commissioners reversed and the matter sent back to them for further action, with instructions to notify the relator of the time and place at which his application will be heard, and an opportunity offered him to present his testimony.